PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    06-30-08

# FARM AND RANCH CONTRACT

1. **PARTIES:** The parties to this contract are _Shawn K. Brown, Trustee_ (Seller) and _Charlie Ruetter_ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements, accessories and crops are collectively referred to as the "Property".
   A. LAND: The land situated in the County of _Haskell_, Texas, described as follows: _Attached description - Exhibit "A"_
   or as described on attached exhibit, also known as _____ (address/zip code), together with all rights, privileges, and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships.
   B. IMPROVEMENTS:
      (1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
      (2) RESIDENTIAL IMPROVEMENTS: The house, garage, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas and satellite dish system and equipment, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
   C. ACCESSORIES:
      (1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ❑ portable buildings ❑ hunting blinds ❑ game feeders ❑ livestock feeders and troughs ❑ irrigation equipment ❑ fuel tanks ❑ submersible pumps ❑ pressure tanks ❑ corrals ❑ gates ❑ chutes ❑ other: _____

      (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, controls for satellite dish system, controls for garage door openers, entry gate controls, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, and artificial fireplace logs.
   D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.
   E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: _____

   F. RESERVATIONS: Seller reserves the following mineral, water, royalty, timber, or other interests: _____

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ............$ _254,800.00_
   B. Sum of all financing described below (excluding any loan funding fee or mortgage insurance premium) ............$ _____
   C. Sales Price (Sum of A and B) ............$ _254,800.00_
   D. The Sales Price ❑ will ❑ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be calculated on the basis of $ _____ per acre. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within _____ days after the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ❑ 3A ❑ 3B ❑ proportionately to 3A and 3B.

Initialed for identification by Buyer _CR_ and Seller _SB_    TREC NO. 25-6

Contract Concerning _____ Page 2 of 9   06-30-08
(Address of Property)

**4. FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
  ❏ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount of $_____ (excluding any loan funding fee or mortgage insurance premium).
   (1) Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s), this contract will terminate and the earnest money will be refunded to Buyer.
   (2) Financing Approval: (Check one box only)
     ❏ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Condition Addendum.
     ❏ (b) This contract is not subject to Buyer being approved for the financing and does not involve FHA or VA financing.
  ❏ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
  ❏ C. SELLER FINANCING: A promissory note from Buyer to Seller of $_____, secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

**5. EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit $_____ as earnest money with _____, as escrow agent, at _____
(address). Buyer shall deposit additional earnest money of $_____ with escrow agent within _____ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**
  A. TITLE POLICY: Seller shall furnish to Buyer at ☑ Seller's ❏ Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____
   (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
   (1) The standard printed exception for standby fees, taxes and assessments.
   (2) Liens created as part of the financing described in Paragraph 4.
   (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
   (4) The standard printed exception as to marital rights.
   (5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
   (6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements. Buyer, at Buyer's expense, may have the exception amended to read, "shortages in area".
  B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or the Closing Date, whichever is earlier.
  C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only):
   ❏ (1) Within _____ days after the effective date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (Affidavit). The existing survey ❏ will ❏ will not be recertified to a date subsequent to the effective date of this contract at the expense of ❏ Buyer ❏ Seller. If the existing survey is not approved by the Title Company or Buyer's lender(s), a new survey will be obtained at the expense of ❏ Buyer ❏ Seller no later than 3 days prior to Closing Date. **If Seller fails to furnish the existing survey or Affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.**
   ☑ (2) Within _____ days after the effective date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
   ❏ (3) Within _____ days after the effective date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
   ❏ (4) No survey is required.

Initialed for identification by Buyer _CR_ _____ and Seller _SB_ _____          TREC NO. 25-6

Contract Concerning _____ Page 3 of 9    06-30-08
(Address of Property)

D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (6) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity:
_____
_____
Buyer must object the earlier of (i) the Closing Date or (ii) __10__ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. EXCEPTION DOCUMENTS: Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

F. SURFACE LEASES: Prior to the execution of the contract, Seller has provided Buyer with copies of written leases and given notice of oral leases (Leases) listed below or on the attached exhibit. The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title:_____
_____
_____

G. TITLE NOTICES:
  (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
  (2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
  (3) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.
  (4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.
  (5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the

Initialed for identification by Buyer __CK__ _____ and Seller __SB__ _____    TREC NO. 25-6

Contract Concerning _____ Page 4 of 9    06-30-08
(Address of Property)

properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☐ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture.

**7. PROPERTY CONDITION:**

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall turn on existing utilities for inspections.
**NOTICE:** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):
(Check one box only)
☐ (1) Buyer has received the Notice
☐ (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☑ (3) The Texas Property Code does not require this Seller to furnish the Notice.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: (Check one box only)
☑ (1) Buyer accepts the Property in its present condition.
☐ (2) Buyer accepts the Property in its present condition provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____.

E. COMPLETION OF REPAIRS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs prior to the Closing Date. All required permits must be obtained, and repairs must be performed by persons who are licensed or otherwise permitted by law to provide such repairs. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may do so and receive reimbursement from Seller at closing. The Closing Date will be extended up to 15 days, if necessary, to complete repairs.

F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. ~~SELLER'S DISCLOSURES: Except as otherwise disclosed in this contract, Seller has~~ no knowledge of the following:
(1) any ~~flooding of the Property~~ which has had a material adverse effect on the use of the ~~Property;~~

Initialed for identification by Buyer _CR_ _____ and Seller _SB_ _____    TREC NO. 25-6

Contract Concerning _____ Page 5 of 9    06-30-08
(Address of Property)

~~(2) any pending or threatened litigation, condemnation, or special assessment affecting the~~ Property;
(3) any environmental hazards or ~~conditions materially~~ affecting the Property;
(4) any dumpsite, landfill, ~~or underground~~ tanks or containers now or previously located on the ~~Property;~~
(5) ~~any wetlands~~, as defined by federal or state law or regulation, affecting the Property; or
~~(6) any threatened or endangered species or their habitat affecting the Property.~~

I. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. **GOVERNMENT PROGRAMS:** The Property is subject to the government programs listed below or on the attached exhibit:_____.
Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**
A. The closing of the sale will be on or before _20 days after ~~approx~~ entry of an order by the Bankruptcy Court approving the sale_, 20____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
B. At closing:
(1) Seller shall execute and deliver a ~~general warranty~~ _trustee's_ deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

10. **POSSESSION:** Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☑ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)

_Bankruptcy Court Provisions_

Initialed for identification by Buyer __CR__ ____ and Seller __SB__ ____    TREC NO. 25-6

Contract Concerning _____ Page 6 of 9   06-30-08
(Address of Property)

## 12. SETTLEMENT AND OTHER EXPENSES:
A. The following expenses must be paid at or prior to closing:
   (1) Expenses payable by Seller (Seller's Expenses):
      (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
      (b) Seller shall also pay an amount not to exceed $ __N/A__ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
   (2) Expenses payable by Buyer (Buyer's Expenses):
      (a) Loan origination, discount, buy-down, and commitment fees (Loan Fees).
      (b) Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; mortgagee title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; and other expenses payable by Buyer under this contract.
B. Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender.
C. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

## 13. PRORATIONS AND ROLLBACK TAXES:
A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.
B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property claimed by Seller results in Assessments for periods prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

## 14. CASUALTY LOSS:
If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, ~~Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control,~~ Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

## 15. DEFAULT:
If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If, due to factors beyond Seller's control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

## 16. MEDIATION:
It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion ☐ will ☒ will not be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

Initialed for identification by Buyer __PR__ _____ and Seller __SB__ _____    TREC NO. 25-6

Contract Concerning _____ Page 7 of 9   06-30-08
(Address of Property)

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**
   A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.
   B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties.
   C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
   D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
   E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

**To Buyer at:**                                        **To Seller at:**

_Charlie Rueffer_                                       _1401 Elm St._

_423 CR 278_                                            _Suite 4750_

_Munday, TX 76371_                                      _Dallas, TX 75202_

Telephone: _(940) 422-4253_                             Telephone: _(214) 651-6508_
           _cell 940-203-0541_

Facsimile: ( )                                          Facsimile: _(214) 744-2615_

E-mail: _____                          E-mail: _sbrown@wgblawfirm.com_

Initialed for identification by Buyer _CR_ _____ and Seller _SB_ _____     TREC NO. 25-6

Contract Concerning _____ Page 8 of 9   06-30-08
(Address of Property)

## 22. AGREEMENT OF PARTIES:
This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

- ☐ Third Party Financing Condition Addendum
- ☐ Seller Financing Addendum
- ☐ Addendum for Property Subject to Mandatory Membership in a Property Owners' Association
- ☐ Buyer's Temporary Residential Lease
- ☐ Seller's Temporary Residential Lease
- ☐ Addendum for Sale of Other Property by Buyer
- ☐ Addendum Containing Required Notices Under §5.016, §420.001 and §420.002, Texas Property Code
- ☐ Addendum for "Back-Up" Contract
- ☐ Addendum for Coastal Area Property
- ☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- ☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- ☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
- ☒ Other (list): Bankruptcy Court Provisions

## 23. TERMINATION OPTION:
For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ N/A (Option Fee) within 2 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☐ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

## 24. CONSULT AN ATTORNEY:
Real estate licensees cannot give legal advice. READ THIS CONTRACT CAREFULLY. If you do not understand the effect of this contract, consult an attorney BEFORE signing.

Buyer's Attorney is: _____

Seller's Attorney is: _____

Telephone: ( )

Telephone: ( )

Facsimile: ( )

Facsimile: ( )

E-mail: _____

E-mail: _____

**EXECUTED the _____ day of _____, 20___ (EFFECTIVE DATE).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

_Charlie Knoffler_
Buyer

_Shawn K. Brown, Trustee_
Seller

Buyer

Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC NO. 25-6. This form replaces TREC NO. 25-5.

TREC NO. 25-6

Contract Concerning _____ Page 9 of 9   06-30-08
(Address of Property)

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:                                        Listing Broker:
By: _____                   By: _____

## BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

Other Broker _____ License No. _____    Listing or Principal Broker _____ License No. _____

Associate _____             Associate _____

Address _____               Address _____

City _____ State _____ Zip _____             City _____ State _____ Zip _____

Telephone _____ Facsimile _____            Telephone _____ Facsimile _____

E-mail _____                E-mail _____

represents  ☐ Buyer only as Buyer's agent            represents  ☐ Seller only
            ☐ Seller as Listing Broker's subagent                ☐ Buyer only
                                                                 ☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☐Seller ☐ Buyer will pay Listing/Principal Broker ☐a cash fee of $ _____ or ☐ _____% of the total Sales Price; and (b) ☐Seller ☐ Buyer will pay Other Broker ☐a cash fee of $ _____ or ☐ _____% of the total Sales Price.  Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

**Brokers' fees are negotiable. Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.**

Seller _____                Buyer _____

Seller _____                Buyer _____
**Do not sign if there is a separate written agreement for payment of Brokers' fees.**

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____ is acknowledged.

Seller or Listing Broker _____        Date _____

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of ☐Contract and ☐$_____ Earnest Money in the form of _____ is acknowledged.
Escrow Agent: _____               Date: _____

By: _____
                                                           Email Address _____
Address _____                     Telephone (____) _____

City _____ State _____ Zip _____                   Facsimile: (____) _____

TREC NO. 25-6

## Bankruptcy Court Approval

This Farm and Ranch Contract is expressly subject to the approval by the United States Bankruptcy Court for the Northern District of Texas, WICHITA FALLS Division, in the chapter 7 bankruptcy case styled and numbered *In re ROBERT WILLIAM RAYNES JR. and BETTY SUE RAYNES*, case no. 09-70033-HDH-7. The chapter 7 trustee executing the contract, Shawn K. Brown, is not bound by this contract until the Court might approve it. Any payment obligation of the Seller in the contract shall be construed to require the payment at closing from the proceeds of the sale. Neither the Trustee nor the bankruptcy estate will be liable to the buyer or any third party for any payment obligations other than those paid at closing from the proceeds of sale. The sale is "as is", without representation or warranty. The sale is subject to any higher and better offer received by the Trustee prior to approval by the Bankruptcy Court.

Vol 502 PAGE 99

Exhibit "A"

Being the Subdivision of the 390.2 acre Florence E. Fly Estate out of the East part of Section 141, Block 45, H & TC RR Co. Survey and the South part of the Mrs. Mary H. Chatham Survey No. 6, Haskell County, Texas; called 401-1/2 acres and being described in two tracts as follows, to-wit:

TRACT 1: The West 195.1 acres of the called East 306 1/8 acres of Section 141, Block 45, H & TC RR Co. Survey, Abstract No. 278, Haskell County, Texas.
Commencing at a spike set for the occupied southeast corner of Section 141, in the middle of a county road on the west side of the Hiram Riggs Survey 130;
THENCE N 89 deg. 17' W 5099.1 feet, to and with the center of 100 foot F.M. Highway 1720 easement to the occupied southwest corner of said Florence E. Fly Estate for the southwest corner of this tract and the place of beginning;
THENCE N 01 deg. 41' W, along the fenced west line of said estate, at 47.8 feet pass 0.3 of a foot left of a braced 2" iron post west fence corner, at 50 feet cross the highway right-of-way, at 2629.1 feet pass a ribboned cedar gate post, at 2641.3 feet pass a new fence left, in all 2655.4 feet to the northwest corner of this tract in the occupied South Line of Section 138, Block 45, H & TC RR Co. Survey;
THENCE N 87 deg. 54' E, with the fenced occupied North Line of Section 141, at 20.3 feet pass a ribboned 3" treated wood fence post, at 2551.4 feet pass a new, braced 3" iron pipe southeast fence corner post at the occupied southeast corner of Section 138, in all 3171.0 feet to a ½" iron rod witnessed by a steel fence post set for the northeast corner of this tract;
THENCE S 00 deg. 44' W, parallel with the occupied West Line of the Hiram Riggs Survey, at 2759.6 feet pass a ½" iron rod set in the north right-of-way fence, in all 2808.6 feet to a spike set in the center of F.M. Highway 1720 for the southeast corner of this tract in the South Line of Section 141;
THENCE N 89 deg. 17' W 3054.9 feet, with the occupied South Line of Section 141 in the center of 100 foot F.M. Highway 1720 easement, to the place of beginning.

TRACT 2: The East 195.1 acres of the Florence E. Fly Estate in the East part of Section 141, Block 45, H & TC RR Co. Survey, Abstract No. 278 and the South part of the Mrs. Mary H. Chatham Survey No. 6, Abstract No. 647, Haskell County, Texas.
Beginning at a spike set for the occupied southeast corner of Section 141, in the middle of a county road on the west side of the Hiram Riggs Survey 130;
THENCE N 89 deg. 17' W 2044.2 feet, to and with the center of 100 foot F.M. Highway 1720 easement along the occupied South Line of Section 141, to a spike set for the southwest corner of this tract and the southeast corner of Tract 1;
THENCE N 00 deg. 44' E, with the East Line of Tract 1 parallel with the West Line of the Hiram Riggs Survey, at 49 feet pass a ½" iron rod set in the right-of-way fence, in all 2808.6 feet to a ½" iron rod set for the northeast corner of Tract 1 in the occupied North Line of Section 141, witnessed by a steel post;
THENCE S 87 deg. 54' W 619.6 feet, with the north line of Tract 1, to a new, braced 3" iron pipe southeast fence corner post at the occupied southeast corner of Section 138, Block 45, H & TC for a corner of this tract;
THENCE N 00 deg. 03' W 1057.0 feet, with an old property-line fence near the East line of Section 138, to the stub of an old fence corner post, from which a new 2" iron pipe 6 feet tall bears 0.5 of a foot Southerly;
THENCE S 89 deg. 25' E, with an old property-line fence along the north line of said Florence E. Fly Estate, at 17.8 feet pass a new 2" iron pipe 4 feet tall, at 18.8 feet pass a utility post fence corner, at 2657.3 feet pass the south edge of a cedar fence corner post, in all 2677.6 feet to the northeast corner of this tract in the occupied West Line of said Hiram Riggs Survey in the road;
THENCE S 00 deg. 44' W 3841.1 feet, in said road to the place of beginning.

*R. W. Raynes Jr*
*Betty Raynes*